UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREN LYNNE BONIFAS,

   Plaintiff,

   v.

NANCY A BERRYHILL, Acting
Commissioner of Social Security,

   Defendant.

CASE NO. 2:17-CV-00395-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff Karen Lynne Bonifas filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 7.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to consider all of Plaintiff's severe impairments at Step Two. The ALJ also failed to give proper weight to medical opinion evidence. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations. The

ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On April 5, 2013, Plaintiff filed an application for SSI and DIB, alleging disability as of October 1, 2009. *See* Dkt. 10, Administrative Record ("AR") 23. The application was denied upon initial administrative review and on reconsideration. *See* AR 21. A hearing was held before ALJ Virginia M. Robinson on May 14, 2015. AR 21. At the hearing, Plaintiff amended her disability onset date to February 11, 2013. AR 21.

In a decision dated July 31, 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 21-32. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-4; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to find Plaintiff's bipolar disorder, post-traumatic stress disorder ("PTSD"), panic disorder, and pain disorder were severe impairments at Step Two; and (2) discounting the medical opinions of Drs. Faulder Colby, Ph.D., and Michael Picco, D.O. Dkt. 14, p. 4-17.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

I. **Whether the ALJ failed to properly consider all of Plaintiff's severe mental impairments at Step Two.**

Plaintiff asserts the ALJ erred by failing to find her bipolar disorder, PTSD, panic disorder, and pain disorder were severe impairments at Step Two of the sequential evaluation process. Dkt. 13, pp. 15-17.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Regarding mental impairments, the ALJ will consider four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*. at (d)(1). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

A. Severe Impairments

At Step Two, the ALJ found Plaintiff had the following severe impairments: "osteoarthritis, right rotator cuff syndrome, obesity, affective disorder, and anxiety disorder." AR 23. The ALJ further opined Plaintiff had the non-severe impairments of GERD[1] and fatty infiltration of the liver. AR 23. While the ALJ discussed Plaintiff's affective and anxiety disorders at Step Two, the ALJ failed to discuss four of Plaintiff's other diagnosed mental impairments – bipolar disorder, PTSD, panic disorder, and pain disorder – at Step Two. *See* AR 23. The ALJ also did not discuss these mental impairments in any other part of her decision. *See* AR 21-32.

Drs. Sylvia A. Thorpe, Ph.D., Jeffrey Nelson, M.D., and Faulder Colby, Ph.D. – each an acceptable medical source – diagnosed Plaintiff as having one or more of these four mental impairments. *See* AR 293, 384, 435. Plaintiff's mental impairments cause functional limitations which impact her ability to perform basic work activities. For example, Dr. Thorpe opined Plaintiff has mild limitations in her ability to learn new tasks, work safely, and communicate with and perform for the public.[2] AR 296. When Plaintiff saw Dr. Nelson, she complained her depression had increased. AR 433. She reported excessive sleep and reduced energy, motivation, and interest. AR 433. Plaintiff also told Dr. Nelson she was having difficulty concentrating and decision-making, and both self-care and house upkeep had "deteriorated." AR 433.

Dr. Colby opined Plaintiff has moderate limitations in her ability to understand, remember, and persist through tasks accompanying short and simple instructions. AR 385. He

---

[1] "GERD" stands for gastroesophageal reflux disease. *See e.g.*, *Olson v. Astrue*, 2008 WL 4181675 (W.D. Wash. Sept. 8, 2008).

[2] The Court notes Dr. Thorpe examined Plaintiff on July 27, 2012. While her opinion pre-dates Plaintiff's amended alleged onset date, the Court finds Dr. Thorpe's opinion is relevant as it shows, even prior to Plaintiff's amended alleged onset date, she was diagnosed with mental impairments and suffered functional limitations.

found Plaintiff moderately limited in her ability to communicate and perform effectively in a work setting. AR 385. Dr. Colby further opined Plaintiff has marked limitations in several areas, including her ability to understand, remember, and persist in tasks accompanying detailed instructions, and her ability to adapt to change in routine work settings. AR 385. Additionally, Dr. Colby found Plaintiff is severely impaired in her ability to complete a normal work day and work week without interruptions from psychological symptoms. AR 385.

In sum, the record establishes that acceptable medical sources diagnosed Plaintiff with these four mental impairments, and these impairments significantly limit Plaintiff's ability to conduct basic work activities. Plaintiff is limited in several areas, including her ability to learn new tasks, communicate and perform effectively in a work setting, and complete a normal work day and work week without interruptions from psychological symptoms. Therefore, the Court finds the record shows Plaintiff's four mental impairments, which were not discussed by the ALJ, are severe impairments. Thus, the ALJ erred at Step Two when she failed to find these four mental impairments were severe.

B. Harmless Error

Defendant argues, even if the ALJ erred at Step Two, any error was harmless. Dkt. 15, pp. 10-11. "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119

(quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ failed to discuss Plaintiff's bipolar disorder, PTSD, panic disorder, and pain disorder at Step Two or in any part of the sequential evaluation process. *See* AR 23-32. Hence, the ALJ did not consider these mental impairments, or the limitations caused by these impairments, when determining the RFC. The Court notes that the ALJ found Plaintiff had two severe mental impairments at Step Two (*i.e.*, affective disorder and anxiety disorder), and did include some mental limitations in the RFC. Nonetheless, if the ALJ had properly considered all six of Plaintiff's severe mental limitations, the RFC could have contained additional mental limitations, such as Plaintiff's limitations in learning new tasks and completing a normal work day and work week without interruptions from psychological symptoms.

Further, simply because the ALJ found Plaintiff's affective disorder and anxiety disorder were severe impairments does not show the ALJ considered all six of Plaintiff's severe mental impairments. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (finding that because "the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnoses as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record"); *Smolen*, 80 F.3d at 1290 ("having found [the plaintiff] to suffer from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments . . . affected her residual functional capacity to perform work").

Therefore, the Court cannot determine whether the ALJ properly considered these four severe mental impairments and the associated limitations when determining the RFC and at

Steps Four and Five of the sequential evaluation process. Evidence in the record indicates Plaintiff's mental impairments significantly limit her ability to conduct basic work activities. Had the ALJ properly considered all of Plaintiff's mental impairments at Step Two, the RFC assessment and hypothetical questions posed to the vocational expert, Paul Prachyl, may have included additional limitations.

Defendant maintains the ALJ "discounted Dr. Colby's opinion, and therefore, did not need to accept his diagnoses of bipolar, PTSD, or pain disorder." Dkt. 15, p. 10; *see* AR 29-30 (ALJ giving "little weight" to Dr. Colby's opinion). Nonetheless, as discussed below, the ALJ erred when she gave little weight to Dr. Colby's opinion.

As the ALJ's failure to properly consider all of Plaintiff's mental impairments at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision, it is not harmless. Because the ALJ erred at Step Two, the ALJ is directed to reevaluate this entire matter on remand, including all six of Plaintiff's severe mental impairments.

**II. Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff argues the ALJ erred in her evaluation of the opinion evidence from examining psychologist Dr. Faulder Colby, Ph.D., and treating physician Dr. Michael Picco, D.O. Dkt. 14, pp. 4-15.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035,

1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. <u>Dr. Colby</u>

Plaintiff asserts the ALJ erred when she gave little weight to Dr. Colby's opinion by not providing specific and legitimate reasons, based on substantial evidence, for doing so. Dkt. 14, pp. 4-11.

On March 26, 2013, Dr. Colby completed a psychological and psychiatric evaluation of Plaintiff, which included a clinical interview and mental status examination ("MSE"). AR 383-87. As explained above, Dr. Colby opined Plaintiff has several limitations, including a marked limitation in her ability to follow detailed instructions and a severe limitation in her ability to complete a normal work day and work week without interruptions from psychological symptoms. *See* AR 385. Dr. Colby also ascertained Plaintiff has marked limitations in maintaining appropriate behavior in a work setting, performing activities within a schedule, maintaining regular attendance, and being punctual without supervision. AR 385.

After summarizing Dr. Colby's findings, the ALJ opined:

> I gave little weight to the opinion of Dr. Colby . . . Dr. Colby's opinion is inconsistent with (1) the claimant's longitudinal treatment history, (2) her performance on mental status examinations, and (3) her documented daily activities set forth above. For example, a mere 9 months earlier, Dr. Thorpe assessed mild to no limitations, and there is no evidence of significant change in the interim except for family issues (Ex. 5F and l0F). Additionally, as noted above, less than a month later, the claimant presented merely as slightly sad mood (Ex. 5F/ 1-6). By June 2013, she was quiet but positive (Ex. 10F/14). In September 2013, the claimant presented as positive (Ex. 10F/8). She also reported must less distress and successfully utilizing mindfulness and DBT techniques

(Ex. 10F/9). Additionally, as noted above, the claimant has maintained a robust set of daily activities that includes volunteering in her community, taking several out of town trips, and starting new hobbies such as wood carving.

AR 29-30 (numbering added).

First, the ALJ gave little weight to Dr. Colby's opinion because she found his opinion inconsistent with Plaintiff's "longitudinal treatment history." AR 30. An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Nonetheless, a conclusory statement finding an opinion inconsistent with the overall record is insufficient to reject the opinion. *See Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.

*Id.* (internal footnote omitted).

In this case, the ALJ's assertion that Dr. Colby's opinion was inconsistent with Plaintiff's "longitudinal treatment history" was a conclusory statement that did not meet the level of specificity required to reject Dr. Colby's opinion. In discounting Dr. Colby's opinion, the ALJ discussed records which described Plaintiff as feeling positive around the same time period as Dr. Colby's examination. *See* AR 30. But, the ALJ failed to explain how these other records contradicted Dr. Colby's findings. *See* AR 30. Hence, the ALJ's conclusory statement was not a specific, legitimate reason to reject Dr. Colby's opinion. *See Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence").

Additionally, "it is error for an ALJ to pick out a few isolated instances of [mental health] improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citation omitted). Here, Plaintiff has a documented history of mental health impairments. *See e.g.*, AR 292-87, 377-80, 431-35. The ALJ thus erred in selectively noting records which may show momentary improvements, as she must consider Plaintiff's overall mental health picture. *See Garrison*, 759 F.3d at 1017; *see also Reddick*, 157 F.3d at 722-23 (an ALJ must not "cherry-pick" certain observations without considering their context).

The ALJ also reasoned Dr. Colby's opinion was inconsistent with Plaintiff's longitudinal treatment history because nine months prior to Dr. Colby's assessment, "Dr. Thorpe assessed mild to no limitations." AR 30. As stated above, when a physician's opinion is contradicted, the opinion can only be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The fact that Dr. Colby's opinion appeared inconsistent with Dr. Thorpe's opinion shifts the standard of review for giving less weight to Dr. Colby's opinion from clear and convincing to specific and legitimate reasons, but does not eliminate the need for the ALJ to provide a proper reason to reject his opinion. Here, the ALJ summarily concluded Dr. Thorpe's assessment controls. The ALJ did not explain why a medical opinion nine months prior to Dr. Colby's was controlling, especially in the context of a Plaintiff with diagnosed mental illnesses. *See Garrison*, 759 F.3d at 1017 (mental health symptoms "wax and wane in the course of treatment"). Accordingly, this reason for giving limited weight to Dr. Colby's opinion was not legitimate. *See id.* at 1012-13 (an ALJ errs when she gives a medical opinion little weight when asserting, without explanation, that another medical opinion is more persuasive).

In sum, the ALJ's first reason for giving little weight to Dr. Colby's opinion was error because her reasoning was conclusory, did not consider Plaintiff's overall mental health, and was not supported by specific and legitimate reasons.

Second, the ALJ gave little weight to Dr. Colby's opinion because she ascertained it was inconsistent with Plaintiff's "performance on mental status examinations." AR 30. Yet the ALJ provided no discussion on what aspects of the MSEs were inconsistent with Dr. Colby's opinion. Hence, the ALJ's conclusory statement was not a specific, legitimate reason to reject Dr. Colby's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). On remand, if the ALJ intends to reject Dr. Colby's findings as inconsistent with Plaintiff's treatment history or MSEs, she must explain how they are inconsistent with Dr. Colby's findings.

Third, the ALJ gave little weight to Dr. Colby's opinion because she believed it was inconsistent with Plaintiff's daily activities. AR 30. To support this assertion, the ALJ cited Plaintiff's volunteering, trips out of town, and wood carving. AR 30. Nonetheless, the ALJ's reasoning was once again conclusory, as she did not explain how these activities conflicted with Dr. Colby's findings. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

Moreover, the Court's review of the record reveals Plaintiff's activities were not as "robust" as the ALJ alleged. The record indicates Plaintiff periodically volunteers at a thrift store by sorting items. AR 44-45. She only volunteers, however, "off-and-on, maybe one, two days a month." AR 45. Further, although the ALJ referenced Plaintiff's volunteering with Big Brothers

Big Sisters, Plaintiff volunteered with the program in 2011, prior to her amended alleged onset date of February 11, 2013. AR 21, 30, 44. Thus, the record shows Plaintiff's volunteering is not a robust, consistent activity that undermines Dr. Colby's opinion.

Regarding Plaintiff's trips out of town and wood carving, the record does not support the ALJ's characterization of the evidence. With respect to Plaintiff's trips, the record shows Plaintiff took one trip because her mother passed away. AR 535. The record lacks information on the context and happenings of Plaintiff's other trips. *See* AR 474; AR 528. The record does not indicate, for example, how long these trips were or what Plaintiff's activities were during these trips. *See* AR 474; AR 528. Likewise, Plaintiff once reported she began wood carving as a hobby, but the records lack any other information on this activity, such as how often she engages in wood carving or what is required of her when she carves wood. AR 372. Hence, the record does not support the ALJ's finding that Plaintiff was engaged in "robust" daily activities. The ALJ therefore erred when stating Plaintiff's activities conflicted with Dr. Colby's opinion because her reasoning was both conclusory and not based on substantial evidence. *Bayliss*, 427 F.3d at 1214 n.1 (citation omitted); *Embrey*, 849 F.2d at 421-22.

Had the ALJ properly considered all of Dr. Colby's opined limitations, Plaintiff's severe impairments would have included bipolar disorder, PTSD, and pain disorder at Step Two, and the RFC may have included additional limitations. For example, the RFC may have included the limitations that Plaintiff would have trouble communicating and performing effectively in a work setting, completing a normal work day and work week, and adapting to change in routine work settings. The RFC did not contain these limitations. AR 25-26. Therefore, if Dr. Colby's opinion was included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. Accordingly, the ALJ's failure to properly

consider Dr. Colby's opinion regarding Plaintiff's limitations was not harmless and requires reversal.

B. Dr. Picco

Plaintiff next argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving limited weight to the findings of Dr. Michael Picco, D.O. Dkt. 14, pp. 11-14.

Dr. Picco is Plaintiff's treating orthopedic surgeon. *See* AR 395-409 (Dr. Picco's treatment notes). In a Medical Source Statement, Dr. Picco opined Plaintiff could stand and/or walk for two hours, sit for six hours, and rarely lift twenty pounds. AR 393. Dr. Picco further opined Plaintiff could frequently reach and finger, but could only occasionally handle. AR 393. Moreover, Dr. Picco determined Plaintiff's ability to push/pull was limited in both her upper and lower extremities, and Plaintiff would miss more than four days per month due to her impairments or treatments. AR 393-94.

The ALJ "gave some limited weight" to Dr. Picco's opinion, stating:

> [Dr. Picco's] opinion is somewhat consistent with his treatment notes; however, it is (1) inconsistent with the claimant's actual activities. As noted above, the claimant has been engaged in chainsaw woodcarving. She also was excited to start taking the boat out again and was regularly volunteering as clothing sorter. These are all activities that require postural and manipulative movement that is inconsistent with Dr. Picco's assessment. (2) Finally, his opinion that the claimant would miss more than 4 days per month is entirely speculative.

AR 29 (numbering added).

First, the ALJ gave limited weight to Dr. Picco's opinion because she found it inconsistent with Plaintiff's daily activities, including volunteering, wood carving,[3] and boating.

---

[3] Both the ALJ and Defendant asserted Plaintiff engages in "chainsaw" wood carving. AR 29; Dkt. 15, p. 6. The Court notes, however, that the one report referencing this activity only says Plaintiff engages in "wood carving," not chainsaw wood carving in particular. *See* AR 372.

AR 29. As explained above, the record does not support the ALJ's assertions regarding Plaintiff's volunteering and wood carving. With regards to Plaintiff's boating, the record reveals Plaintiff once reported she planned to take the boat out during summer. *See* AR 498. The record does not say, however, that Plaintiff actually took out the boat or what would have been required of her if she took out the boat. *See* AR 498. Accordingly, the ALJ erred in rejecting Dr. Picco's opinion for being inconsistent with Plaintiff's daily activities because this was not a specific and legitimate reason, supported by substantial evidence, under these circumstances.

Second, the ALJ gave limited weight to Dr. Picco's opinion that Plaintiff would miss more than four days of work per month because she found this opinion "entirely speculative." AR 29. As previously stated, an ALJ must specifically explain why a physician's opinion was flawed. *See Embrey*, 849 F.2d 421-22. Here, the ALJ summarily concluded Dr. Picco's opinion was speculative without explaining how his opinion was speculative. *See* AR 29. As such, this was not a specific and legitimate reason to reject Dr. Picco's opinion.

For the above stated reasons, the Court concludes the ALJ failed to provide specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Picco's opinion. Therefore, the ALJ erred. Had the ALJ properly considered Dr. Picco's opinion, the RFC and the hypothetical questions posed to the vocational expert may have included additional limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

**III.    Whether the case should be remanded for an award of benefits.**

Plaintiff argues this matter should be remanded with a direction to award benefits. *See* Dkt. 14.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering all Plaintiff's severe mental impairments at each step of the sequential evaluation process and re-evaluate the improperly discredited medical opinion evidence. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 4th day of October, 2017.

David W. Christel
United States Magistrate Judge